## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:19-cr-10005 |
| | ) | |
| ADAM LEE WARE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

This matter is before the Court on Defendant Adam Lee Ware's Motion to Quash Search Warrant and Suppress Evidence (Doc. 21) and Motion to Suppress Evidence (Doc. 22). The Prosecution has responded (Docs. 25, 26), and a hearing was held on July 17, 2019. For the reasons stated below, Defendant's Motions (Docs. 21, 22) are DENIED.

### BACKGROUND

According to the application for the search warrant at issue, Defendant was known to the police for having dealt narcotics in the past; indeed, he was on parole for manufacture/delivery of cocaine. (Doc. 21-1 at 2, 4). In July of 2018, an anonymous tip was provided to Peoria Police Sergeant Erin Barisch stating Defendant was dealing narcotics; the initial tip did not mention the residence subject to the search warrant at issue. (Doc. 21-1 at 2). The same anonymous source followed up twice and informed the police Defendant was still dealing narcotics and storing them at a residence located on 1103 South Warren Street. (Doc. 21-2 at 2). The application for

a search warrant provided no further detail about the informant or how the information was acquired, the timeline of the calls, any other information provided by the anonymous tip, or steps taken to corroborate the tip before February 2019.

On February 6, 2019, Peoria Police Sergeant Matthew Lane was surveilling the residence at 1103 S. Warren. (Doc. 21-1 at 2). He saw Defendant leave the building and get into a silver car. (Doc. 21-1 at 2). Lane followed the car and saw it park outside of a different house on the 2300 block of Millman Street. (Doc. 21-1 at 2). Lane then observed a man exit the house and get into Defendant's car. (Doc. 21-1 at 2). The man sat in the front seat of Defendant's car for about five minutes before exiting the car and reentering the house on Millman. (Doc. 21-1 at 2). In the affidavit supporting his application for a search warrant, Lane reported he believed, based on his training and experience, a drug transaction had occurred. (Doc. 21-1 at 2). Lane was unable to follow the car when it drove away. (Doc. 21-1 at 2). However, he and other officers returned to 1103 S. Warren and saw the same silver car parked in front of the residence, at first with someone inside and the lights on, then empty with the lights off. (Doc. 21-1 at 2).

Shortly thereafter, Barisch noticed someone leave 1103 S. Warren, go back to the car, and begin driving. (Doc. 21-1 at 3). Barisch followed it as it drove away until it reached the intersection of Shelley Street and Lincoln Street. (Suppression Hrg. on 7/17/2019). At that intersection, the driver failed to signal a right turn for the last continuous 100 feet before turning onto Lincoln; Lane's affidavit stated the vehicle stopped at the stop sign controlling the intersection before

the turn signal was activated. (Doc. 21-1 at 3). Barisch informed another pair of officers who had begun following the car and instructed them to stop it. (Doc. 21-1 at 3). Those officers reported seeing the car cross the road centerline on Moss Avenue and pulled it over. (Doc. 22 at 4). The officers determined Defendant had an open container of alcohol in the vehicle. (Doc. 21-1 at 3). They asked Defendant to step out of the car and told him they would search him and the vehicle; Defendant responded that was fine. (Doc. 21-1 at 3). The officers searched Defendant and the vehicle, discovering a plastic bag in his jacket pocket that contained a white powder, later determined to be cocaine. (Doc. 21-1 at 3). Although no other contraband was located in the search of Defendant and his car, the officers did find $1,140 in his pockets. (Doc. 21-1 at 3).

Lane and one of the officers who stopped Defendant proceeded to a Hardee's. (Suppression Hrg. on 7/17/2019). There, they met a judge of the Circuit Court of the Tenth Judicial Circuit of Illinois to present an application for a warrant to search 1103 S. Warren. In addition to the above information, Lane's application for a search warrant included information that Defendant had previously been stopped for speeding in May 2018. (Doc. 21-1 at 4). During that stop, a drug dog alerted, leading to a search of Defendant's vehicle. (Doc. 21-1 at 4). The search did not yield contraband, but officers did discover $18,000 in cash, wrapped in a way Lane states in the February 6, 2019 application for a warrant is consistent with how narcotics traffickers bundle money. (Doc. 21-1 at 4).

Based on Lane's application, the judge issued a warrant to search 1103 S. Warren. (Doc. 21-1 at 1). The warrant was served the same evening. (Doc. 26 at 1-2). The subsequent search uncovered over five kilograms of cocaine, 86 grams of cocaine base, $200,000 in cash, evidence of drug manufacturing, and firearms. (Doc. 26 at 3-4). Defendant was indicted for possession with intent to distribute cocaine, possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon. (Doc. 11 at 1-3).

His instant motions argue the stop of his vehicle was an unlawful seizure of his person, so the fruits thereof should be suppressed, and there was not probable cause to search 1103 S. Warren, so the evidence uncovered there should be suppressed.

## LEGAL STANDARD

Police may stop a vehicle where they have probable cause to believe a traffic violation occurred. *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019). This standard is met when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). "But when a police officer mistakenly believes that the law prohibits an act that is, in fact, perfectly legal, even a good faith belief that the law has been violated will not support the stop." *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011).

The review of a search warrant is deferential. "[I]n reviewing the issuing judge's probable cause determination, the district court need only evaluate whether the judge had a 'substantial basis' for concluding that probable cause existed." *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). "Probable cause exists when the supporting affidavit presents a total set of circumstances which create a 'fair probability' that a search will uncover evidence of a crime." *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (quoting *Gates*, 462 U.S. at 238). "Those circumstances need only indicate a reasonable probability that evidence of crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). When a judge is presented with only an affidavit to support the search warrant, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (quoting *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003)).

Even if a reviewing court determines a warrant was issued without the requisite probable cause, "the Fourth Amendment exclusionary rule does not apply to evidence obtained by police officers who acted in objectively reasonable reliance upon a search warrant issued by a neutral magistrate." *Illinois v. Krull*, 480 U.S. 340, 342 (1987) (explaining the holding of *United States v. Leon*, 468 U.S. 897 (1984)). The good-faith inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" given "all of the circumstances." *Herring v. United States*, 555 U.S. 135, 145 (2009) (quoting

*Leon*, 468 U.S. at 922 n. 23). The issuance of a search warrant is *prima facie* evidence of good faith. *United States v. Reichling*, 781 F.3d 883, 889 (7th Cir. 2015). Thus, when a search warrant has issued, a defendant seeking exclusion must demonstrate

> (1) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached function, serving merely as a rubber stamp for the police; (2) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (3) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.

*Edmond v. United States*, 899 F.3d 446, 453 (7th Cir. 2018), *reh'g and suggestion for reh'g en banc denied* (Oct. 4, 2018), *cert. denied,* 139 S. Ct. 1216 (2019) (quoting *United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010)). Defendant here seeks exclusion under the second standard, which requires either that a materially similar affidavit previously failed to establish probable cause or that the affidavit is plainly deficient. *United States v. Glover*, 755 F.3d 811, 819 (7th Cir. 2014).

## DISCUSSION

### I.   The Traffic Stop

The gravamen of Defendant's argument against the stop is that if a motorist forms the intent to turn closer than 100 feet before an intersection, no violation has been committed. (Doc. 22 at 5-6). He argues the officers here could not have had probable cause to believe Defendant had formed such an intention before he came to a stop and utilized his turn signal; consequently, they lacked probable cause to stop

him. (Doc. 22 at 5-6). Because this argument is directly foreclosed by binding Seventh

Circuit precedent, the Court cannot agree.[1]

The relevant law states: "A signal of intention to turn right or left when

required must be given continuously during not less than the last 100 feet traveled

by the vehicle before turning within a business or residence district . . . ." 625 ILCS

5/11-804(b). There is no dispute that Defendant did not signal continuously for 100

feet before turning, or that he was in a business or residence district. Defendant's

inventive argument is that the "when required" language indicates some situation

where signaling is not required, and that situation is where a person stopped at a

stop sign makes a decision of whether and where to turn while stopped. (Doc. 22 at

5-7). This argument was made, and squarely rejected, in *United States v. Kenerson*,

585 F.3d 389, 391–92 (7th Cir. 2009). The precise argument in that case was

> because the defendant came to a full and complete stop, there was no
> traffic at the intersection, and a hypothetical driver who decided that he
> wanted to turn right only after stopping could not comply with relevant
> provision no matter how hard he tried, the code yields 'an absurd result'
> and cannot provide a lawful basis for a *Terry* stop.

*Id.* The Seventh Circuit, however, held "a violation of the relevant provision of the

Illinois Motor Vehicle Code, routine and safe though it might have been," nonetheless

provided probable cause for a stop. *Id.* at 392.

The Defense attempts to distinguish *Kenerson* by noting the absurd result

argument, stating the court engaged in little analysis, arguing it predated another

---

[1] Defendant also argues there is no evidence he committed another violation, such as the alleged crossing of the centerline. (Doc. 22 at 7-8). Because Defendant's first argument fails, the Court finds it unnecessary to address whether there was another suitable basis to initiate a traffic stop.

relevant precedent, and suggesting that in this case, unlike that one, the defendant had not demonstrated an intent to turn before stopping. (Doc. 22 at 7 n.1). These arguments, however, cannot succeed. The slight difference in argument—claiming the adverse reading of the statute would lead to an absurd result rather than just arguing it is incorrect—is not enough of a distinction to allow this Court to disregard *Kenerson*. And the sufficiency of the Seventh Circuit's analysis is irrelevant; even were *Kenerson* not thoroughly reasoned, this Court is bound by Seventh Circuit decisions.

Defendant's factual distinction is similarly unpersuasive. Kenerson began signaling slightly before reaching a stop sign—at which he would have needed to stop regardless—while Defendant claims he did not signal until fully stopped. But this potential slight departure between the facts of the two cases is a distinction without a difference. Either way, the argument is that the intention to turn was formed within 100 feet of the intersection and so it would have not been possible to signal continuously for the full 100 feet.

As for the later precedent, Defendant relies on *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016). In *Stanbridge*, the Seventh Circuit determined the statute at issue in this case did not require a driver to signal before pulling alongside a curb to park. *Id.* Although Defendant would broadly read *Stanbridge* to suggest no signal is required where it would not be reasonable to need one (Doc. 22 at 5-6), the better reading of *Stanbridge* is curbside parking is not a turn within the meaning of the statute. 813 F.3d at 1037 (holding the statute "is *not* ambiguous, and does not

8

require a driver to signal for 100 feet before pulling alongside a curb to park. The minimum signaling distances required by subsection (b) apply only when a driver intends to *turn* right or left." (emphasis in original; internal quotation marks omitted)). The holding of *Kenerson* controls.

## II.  The Search of 1103 S. Warren

Six years ago, Lane submitted an application for a search warrant to search a house in Peoria for evidence of cocaine trafficking based upon information from an anonymous informant. *United States v. Thompson*, 801 F.3d 845, 846–47 (7th Cir. 2015) (per curiam). Although the Seventh Circuit "share[d] the district court's initial instinct about the weakness of th[e] affidavit" and noted it was "growing weary of thin affidavits that suffer from the same omissions which provoked [its] criticisms in the past," it held the search of the residence in that case survived a motion to suppress under the good-faith exception. *Id.* at 848. Still, the Seventh Circuit ended its opinion with a warning: "The government would be well advised . . . not to confuse this decision with an endorsement of Officer Lane's affidavit." *Id.* at 849. That warning was not heeded. The application for a search warrant Lane submitted in this case bears similar hallmarks of insufficiency to those identified in *Thompson*, suggesting Lane may not have recognized the jeopardy in which he places cases by submitting shoddy affidavits. Like the Seventh Circuit, this Court is not inclined to let the errors slide.

Nonetheless, the good-faith exception will salvage this case, just as it did *Thompson*. On a motion to quash a search warrant and suppress evidence obtained therefrom, to prevent the application of the good-faith exception through an

9

argument that the warrant lacked sufficient indicia of probable cause for reasonable reliance, a defendant must demonstrate either that a materially similar warrant was found deficient or that the warrant is plainly deficient. *Glover*, 755 F.3d at 719. Defendant advances the latter theory here. (Doc. 21 at 8).

In its consideration, the Court will set aside the threadbare, potentially eight-month-old tip from an unknown tipster who did not appear before the issuing magistrate and may not have even furnished firsthand knowledge of the matters contained in the tip, and consider whether there are sufficient indicia of probable cause to support good-faith reliance elsewhere in the warrant application. The Court will also not consider Lane's unsupported assertion that based on his training and experience there would be more cocaine inside 1103 S. Warren. While an officer may raise his training and experience in a warrant application, the officer should explain what his training and experience is and how it affects his judgment of the facts before him. *See United States v. Scott*, 901 F.3d 842, 844–46 (7th Cir. 2018). Here, it is unclear whether Lane is drawing his conclusion that cocaine would be in the house from his observation of Defendant's activity on February 6 or from the stop in May 2018 (the facts directly preceding the assertion) or whether he simply has no basis beyond a hunch.

However, the Court cannot say Lane's affidavit "was so lacking in indicia of probable cause as to make entirely unreasonable a belief that probable cause existed." *United States v. Elst*, 579 F.3d 740, 746 (7th Cir. 2009). The affidavit explains officers observed Defendant commit what appeared to be a drug transaction and return to

1103 S. Warren. When he departed again, officers stopped his car and found a small quantity of cocaine and a large quantity of cash. Although not much, this is enough that an officer could reasonably believe the warrant was issued on probable cause. After all, the circumstances described in the affidavit could allow the conclusion that what occurred on Millman Street was a drug deal.[2] That Defendant was found with cocaine and a significant amount of cash and that he was on parole for a prior drug trafficking offense could give rise to the inference that he was the dealer, not the buyer, in the interaction on Millman Street. And the activity of touching base at 1103 S. Warren could seem to a reasonable officer to allow for the conclusion Defendant was storing his cocaine there.

That being said, this warrant application was done without the due care that ought to accompany the process of obtaining a search warrant. An application to invade the privacies protected by the Fourth Amendment of our Constitution is not the place to cut corners. The preparation and review of an application for a search warrant is rather a trust the public has placed in government officials to protect

---

[2] A reasonable officer could think the issuing judge concluded the Millman Street activity appeared to be a drug transaction even absent Lane's assertion of training and experience on this point, but Lane's assertion here was more sufficiently supported. His claim that his training and experience, described in the final paragraph of the application, caused him to believe a drug transaction had occurred comes immediately after his description of the activity on Millman Street; it is clear the facts to which he is applying his training and experience are the behaviors there displayed. A reasonable officer would certainly be able to conclude the reviewing judge might have relied upon Lane's explanation in asserting he knew the activity on Millman Street was a drug deal due to his training and experience, even though it is less clear that Lane's later assertion that due to his training and experience he believed cocaine would be found in 1103 S. Warren could be relied upon.

fundamental rights. *See Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (stating the purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.") (quoting *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967)). It may not have been in *Thompson* and it may not be in this case, but if Lane continues this slipshod approach to seeking search warrants, unconstitutional invasions of privacy and exclusion of evidence will eventually occur.

Issuing judges serve a vital gatekeeping function in preventing officers from ignoring the gravity of entering homes to search by treating warrant applications as a casual matter. *Groh v. Ramirez*, 540 U.S. 551, 560 (2004) ("Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done . . . so that an objective mind might weigh the need to invade [the citizen's] privacy in order to enforce the law." (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)) (alterations in original)). The good-faith exception and the level of deference provided to issuing judges presuppose the gatekeeping function is performed with a level of regard appropriate to such a weighty task. *See Leon*, 468 U.S. at 914–17.

The undersigned is sympathetic to the pressures issuing judges face; I too once sat on the Tenth Judicial Circuit Court. Yet when an officer has a history of presenting applications for search warrants that evince shoddy work, the burden falls even more heavily on the issuing judge to prevent such applications from moving forward and to stop the tree from being poisoned before there are any fruits, before

any person's Fourth Amendment rights have been infringed. *See United States v. Bonitz*, 826 F.2d 954, 958 (10th Cir. 1987) ("The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals . . . . And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home." (quoting *McDonald*, 335 U.S. at 455–56) (alteration in original)).

In sum, exclusion is inappropriate here; the Court cannot find the good-faith exception does not apply. But even if the deterrent force of the exclusionary rule will not be brought to bear, the Court believes important lessons can be learned nonetheless. To that end, the Clerk is directed to furnish a copy of this Opinion to the Chief Judge of the Tenth Judicial Circuit and the Chief of Police for the City of Peoria, so they may share my concerns with their colleagues.

## CONCLUSION

Defendant's Motions (Docs. 21, 22) are DENIED. The evidence from the traffic stop and the search of 1103 South Warren Street will not be excluded on Fourth Amendment grounds. The Clerk is directed to furnish a copy of this Opinion to the Chief Judge of the Tenth Judicial Circuit and the Chief of Police for the City of Peoria.


SO ORDERED.

Entered this 30th day of July 2019.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
